JOHN E. RODGERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rodgers v. Commissioner
Docket No. 26765-81.
United States Tax Court
T.C. Memo 1986-335; 1986 Tax Ct. Memo LEXIS 276; 51 T.C.M. (CCH) 1669; T.C.M. (RIA) 86335; July 31, 1986. John M. McCauley, for the petitioner. John C. McDougal, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined the following deficiency in, and additions to, petitioner's Federal income taxes: Additions to tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654
1980
$672,646.40
$336,323.20
$42,946.17
The issues for decision are: (1) whether petitioner received unreported income from the sale of illegal drugs during the taxable year 1980; (2) whether part of the underpayment of petitioner's income tax for that year was due to fraud; and (3) whether petitioner underpaid his estimated tax for that *277 year. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. John E. Rogers (petitioner) resided in Colonial Heights, Virginia, when he filed his petition in this case. Petitioner did not file a Federal income tax return for his taxable year 1980 within the period prescribed by law, nor had he filed such a return as of October 17, 1983. On December 3, 1982, petitioner entered a plea of guilty in the Circuit Court of the City of Colonial Heights, Virginia, to charges of conspiracy to possess with intent to distribute marijuana, cocaine, and methaqualone (quaalude), and attempted bribery. Indictment of petitioner on the drug charges related to his activities between May 7, 1980 and June 1, 1980. Opha Winston Peden was indicted on similar charges as petitioner's co-conspirator, but the charges against Peden were latter nol prossed pursuant to an order of the Circuit Court. During the period January 1980 through April 1980 (approximately 15 weeks), petitioner sold at least 5 pounds of marijuana per week to Peden, at a price of $325 per pound. During 1980, petitioner also *278 sold one 42-pound bale of marijuana to Peden at a price of $295 per pound. Petitioner paid no more than $265 per pound for this marijuana. Petitioner also made sales of marijuana to other persons during this period. During his taxable year 1980, petitioner had gross receipts from the sale of marijauna to Peden in the amount of $36,765, and a cost of goods sold on these sales in an amount no greater than $31,005. During the year 1980, petitioner made a bulk purchase of 1,000,000 quaaludes at a cost of $0.19 per quaalude. The street price of a quaalude in 1980 was $2 to $4. Petitioner sold Peden small quantities of quaaludes for $1.15 each, but sold the bulk of his quaaludes in lots of 10,000 at a price per pill of $0.85 to $0.95. Petitioner had gross receipts from the sale of quaaludes of at least $850,000 during his taxable year 1980, and a cost of goods sold on these sales of $190,000. During the year 1980, petitioner sold 12 ounces of cocaine to Peden, 8 ounces at a price of $1,800 per ounce, and 4 ounces at a price of $2,300 per ounce. During 1980, petitioner purchased cocaine at a cost of no more than $30,000 per pound. Petitioner was also selling cocaine to persons other *279 than Peden during 1980. Petitioner had gross receipts from the sale of cocaine of at least $23,600 during his taxable year 1980, and a cost of goods sold on these sales of $20,000. [2]
During Peden's association with petitioner, from November 1977 through April 1980, petitioner dealt with large amounts of each. On one occasion during *280 this period, Peden observed a large sum of currency in a brief case in petitioner's possession. Petitioner told his wife, in Peden's presence, that the brief case contained $250,000 in cash. On a number of other occasions, petitioner sent large amounts of each from Richmond, Virginia, to other cities via air express. These packages were mailed in the name of one or the other of petitioner's two daughters. Petitioner told Peden that he owned real estate in Florida, as well as elsewhere on the East Coast, but that the property was not kept in his own name. He also told Peden that he kept most of his money with his daughters because he knew that if he were arrested, the Internal Revenue Service would follow up on any convictions the Government obtained. OPINION 1. Unreported Income
The first issue for decision is whether petitioner had unreported income from the sale of illegal drugs for the taxable year 1980. Respondent now asserts that a deficiency is due based on petitioner having underreported his income for 1980 by the amount of $678,695. [3] Petitioner asserts that respondent's determination of the deficiency should not be allowed to stand on the basis of the testimony *281 of Peden because such testimony was the product of bias and self-interest. Petitioner contends that because Peden's testimony was the only evidence offered by respondent as proof of a deficiency, we should not find petitioner liable for any part of the determined deficiency. Respondent's determination of a deficiency is presumptively correct and petitioner has the burden of proving error in such determination. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). [4] Petitioner has failed to offer any evidence casting doubt on the deficiency determined by respondent. Based on the testimony of Peden at trial, however, we find that respondent erred in calculating petitioner's cost of goods sold for his sales of cocaine in 1980. Accordingly, we hold that petitioner is liable for a deficiency in tax based *282 on his having underreported his income for 1980 by the amount of $669,945. [5]
2. Fraud
We next consider whether any part of the underpayment of petitioner's income tax for the taxable year 1980 was due to fraud. Section 6653(b) imposes an addition to tax if any part of an underpayment of tax is due to fraud. Respondent bears the burden of proving fraud by clear and convincing evidence. Section 7454(a); Rule 142(b); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). Respondent must show that the taxpayer intended to evade taxes which he knew or believed that he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), *283 affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 111-112 (1956). Respondent contends that he has clearly proven fraud by establishing that: (1) petitioner failed to file an income tax return for 1980; (2) the amount of petitioner's unreported income was substantial; (3) petitioner's income earning activities were of an illegal nature; (4) petitioner dealt in large amounts of cash and conducted many business transactions; and (5) petitioner held assets in the names of his daughters. The only evidence offered by respondent to prove these facts, other than petitioner's criminal conviction and failure to file a return, was the testimony of Peden. Petitioner chose to offer no evidence with respect to the issue. Instead, he asserts that respondent cannot satisfy his burden of proof by relying solely on petitioner's failure to file a return, his criminal conviction and Peden's testimony. We are not bound to accept uncontradicted testimony if it is found to be improbable, unreasonable, or the likely product of self-interest. Wood v. Commissioner,338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); *284 Demkowicz v. Commissioner,551 F.2d 929, 931 (3d Cir. 1977). However, Peden's testimony in this case was consistent, reasonable and not inherently improbable. In attempting to establish that Peden's testimony was based on self-interest, petitioner has done nothing more than to allege that the Commonwealth of Virginia was not barred from reinstating the charges against Peden and that the State authorities might have done so if Peden had not given testimony favorable to respondent in this case. Without any evidence to show that State officials might be inclined to take such action, we find this allegation to be highly unlikely and clearly insufficient to impeach Peden's testimony. The facts established by Peden's testimony, in conjunction with petitioner's failure to file a return, are sufficient to satisfy respondent's burden of proof. [6] Accordingly, we hold that respondent has proved by clear and convincing evidence that part of petitioner's underpayment of tax for 1980 was due to fraud. *285 3. Section 6654 Addition to Tax
Finally, we must decide whether respondent correctly determined that petitioner underpaid his estimated tax for his taxable year 1980. Petitioner has the burden of proving error in respondent's determination. Welch v. Helvering,supra at 115; rule 142(a). Petitioner presented no evidence on this issue. Accordingly, we sustain respondent's determination. To reflect our conclusions on the disputed issues, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Respondent asserts that petitioner's cost of goods sold for cocaine should be based on petitioner cutting the purity of the cocaine by 50 percent prior to resale. Peden testified at trial, however, that the cocaine purchased by petitioner was 90 percent pure and that petitioner only cut the cocaine to 80 or 85 percent purity before resale. We will assume that the purity of the cocaine was cut from 90 percent to 80 percent based on petitioner's failure to prove the cocaine sold was more than 80 percent pure. Rule 142(a), Tax Court Rules of Practice and Procedure. The cost of goods sold of the cocaine is, therefore, $20,000, computed as follows: ↩
16 ounces at $30,000/pound
=
$1,875.00
per ounce
Cut from 90 to 80 percent
X
8/9 Cost per ounce sold
$1,666.67
Ounces sold
X
12
Total cost of goods sold
$20,000.00
3. Respondent calculates this amount as follows: ↩
Gross Receipts:
Marijuana
$36,765
Quaaludes
850,000
Cocaine
23,600
Total Gross Receipts
$910,365
Cost of Goods Sold:
Marijuana
$30,420
Quaaludes
190,000
Cocaine
11,250
Total Cost of Goods Sold
$231,670
Total Amount Underreported
$678,695
4. Unless otherwise indicated, all rule references are to the Tax Court Rules of Practice and Procedure. ↩
5. This amount is calculated as follows: ↩
Gross Receipts:
Marijuana
$36,765
Quaaludes
850,000
Cocaine
23,600
Total Gross Receipts
$910,365
Cost of Goods Sold:
Marijuana
$30,420
Quaaludes
190,000
Cocaine
20,000
Total Cost of Goods Sold
240,420
Total Amount Underreported
$669,945
6. See Yocum v. Commissioner,T.C. Memo. 1985-447 (finding of fraud where taxpayer failed to report substantial illegal income from transportation of marijuana during 2 years and engaged in large cash transactions); Bender v. Commissioner,T.C. Memo. 1985-375 (where taxpayer failed to report income from sale of hashish in 1 year, we stated that a dual motive in failing to file and other acts of concealment did not relieve taxpayer of addition to tax for fraud); Piazza v. Commissioner,T.C. Memo. 1985-222 (finding of fraud where taxpayer omitted substantial amounts of income from extortion); DeVaughn v. Commissioner,T.C. Memo. 1983-712↩ (finding of fraud where taxpayer failed to report illegal bribes and kickbacks during 2 years and deposited money in bank accounts opened under fictitious names).